316 So.2d 850 (1975)
Norman S. HUNT, M. D.
v.
LA CHERE MAISON, INC., and Charlie Carson, d/b/a Carson's Dump Truck and Services, etc.
No. 10370.
Court of Appeal of Louisiana, First Circuit.
July 8, 1975.
Rehearing Denied August 26, 1975.
Glenn L. Morgan, New Orleans, for appellant.
Charles R. Ryan, Houma, for Charlie Carson.
*851 Edmund J. Connely, Houma, for Raymond Grabert.
Jeffrey J. Himel, Jr., Houma, for Lawrence Fort.
Jude T. Fanguy, Houma, for Wickes Corp.
La Chere Maison, Inc. through its President, Norman Hunt, Jr., Metairie.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Plaintiff, Norman S. Hunt, M. D. (Appellant) appeals from judgment subordinating his mortgage to a subsequently recorded materialman's lien in favor of The Wickes Corporation d/b/a Wickes Lumber & Building Supplies (Wickes), and a subsequently recorded laborer's and materialman's lien in favor of Charlie Carson d/b/a Carson's Dump Truck and Services (Carson). We amend the judgment to reduce Carson's claim and, as amended, we affirm.
On February 21, 1972, LaChere Maison, Inc. (Owner) executed a promissory note in the sum of $13,000.00, to the order of "myself". The note was endorsed in blank and secured by a mortgage on certain real estate belonging to Owner and situated in Terrebonne Parish. The mortgage, granted in favor of The Terrebonne Bank and Trust Company or any future holder thereof, was recorded February 22, 1972. Appellant purchased the note from the bank on December 28, 1972, for the sum of $10,905.36. It appears that the house was constructed on the mortgaged property, and that several liens were filed against the property because of unpaid claims for labor and material furnished in the construction project. It is conceded that the contract for construction of the residence was not recorded.
Pursuant to LSA-R.S. 9:4812, Wickes perfected a materialman's lien in the amount of $5,152.28 against subject property by recordation of affidavit on May 5, 1972. Carson filed a materialman's and laborer's lien in the aggregate of $285.00. Six additional liens were filed against subject property, all of which have been settled by amicable agreement and form no part of this controversy.
Wickes filed suit on December 15, 1972, to reduce its claim to judgment. In conjunction with its suit bearing Number 38,617 on the docket of the trial court, Wickes filed a notice of lis pendens as required by LSA-R.S. 9:4812.
Appellant filed this present action on February 12, 1973. The petition is designated "Petition for Executory Process on Mortgage Note and for a Concursus Proceeding". Appellant named Owner, Wickes, Carson, and all other mortgagees and lienholders of record, as parties defendant. A motion by Appellant to consolidate Wickes' suit Number 38,617 with the present action appears in the record of this suit. Said motion is unsigned by the judge of the trial court and is not marked "filed" by the clerk of the lower court. Appearing on said motion to consolidate is a certificate of service, dated February 10, 1973, signed by counsel for Appellant, indicating service thereof by mail on the mentioned date.
On March 8, 1973, Wickes obtained judgment by default against Owner in the amount of its claim, $5,152.28, plus legal interest from date of judicial demand. Said judgment, which also recognized Wickes' lien, was recorded March 8, 1973. On March 12, 1973, subject property was seized by the Sheriff pursuant to Appellant's foreclosure proceeding. After compliance with all legal formalities and delays, subject property was sold at Sheriff's Sale to Appellant for the sum of $14,000.00, on May 16, 1973. Appellant paid the Sheriff costs in the sum of $692.95, retaining the balance of $13,307.05. On July 24, concursus proceeding, at which time only 1974, Appellant deposited $6,000.00 in its *852 Wickes and Carson remained as defendants therein. Wickes' and Carson's claims were duly tried and submitted to the trial court pursuant to agreement permitting judgment thereon to be rendered during vacation. On August 5, 1974, judgment was rendered in favor of Wickes and Carson recognizing their claims against the fund as superior to Appellant's claim. By agreement, Wickes and Carson apportioned their claims to the $6,000.00 fund in the amounts of $5,700.00 and $300.00, respectively. Wickes then withdrew $5,700.00 from the deposit leaving the sum of $300.00 in the registry of the trial court.
The primary issue is the ranking of the Wickes and Carson liens as opposed to Appellant's previously recorded mortgage. Since no contract or bond was recorded in conjunction with the construction project, the instant case falls within the ambit of LSA-R.S. 9:4812. The mentioned statute grants materialmen a lien and privilege on lands and improvements for the value of materials furnished in construction projects. Such liens, when properly and timely filed, are ranked superior to all other liens and privileges except: (1) Taxes; (2) local assessments for improvements; (3) bona fide mortgages and vendor's privileges which existed and were recorded prior to commencement of work and prior to furnishing of materials for the project, and (4) laborer's liens. LSA-R.S. 9:4812 also pertinently provides:
"The said claim, recorded as aforesaid, shall preserve a privilege against the property for a period of one year from the date of its recordation, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such cause of action shall prescribe within one year from the date of the recordation of the claim in the mortgage records of the office of the clerk of court or the office of the recorder of mortgages. The effect of the recordation of the claim shall cease and the privilege preserved by the recordation shall perempt unless a notice of filing of a suit * * * on said claim is recorded within one year from the date of the recordation of the inscription of said claim."
Concerning the time of recordation of the mortgage, Appellant called in his behalf only one witness, namely, Appellant's son, Norman S. Hunt, Jr. In essence Mr. Hunt testified merely that he executed the note and mortgage at the bank. He had no personal knowledge of when the mortgage was recorded or when work was first performed or materials first delivered to the job site. He also testified his first visit to the work site was approximately one week following execution of the mortgage, at which time he inspected the work preparatory to pouring the concrete slab for the building.
David Griffith, Wickes' manager, testified that Owner was extended credit pursuant to an agreement whereby materials were delivered to the site. The amount of Wickes' claim is undisputed. Griffith also testified that the first two deliveries of materials were made early in the morning of February 22, 1972, after Wickes' opening hour of 8:00 A.M. The trial court found that Appellant failed to establish recordation of the mortgage prior to performance of work on or delivery of materials to the job site. We find no error in this factual conclusion.
Having failed to establish prior recordation of his mortgage, Appellant's mortgage is subordinate to Wickes' and Carson's liens for materials. So far as concerns Carson's lien for labor, Appellant's mortgage is subordinate to such claim irrespective of the time of recording Appellant's mortgage. LSA-R.S. 9:4812.
Carson contracted with Owner to haul four loads of trash from the premises at $12.00 per load. For this service, Carson claims $48.00. It appears, however, that Carson paid a laborer $2.50 per hour for *853 10 hours, or the sum of $25.00 in connection with the mentioned hauling. The re maining $23.00 of the hauling claim was for labor performed by Carson himself. Additionally, Carson claims $120.00 for eight loads of dirt; $42.00 for four hours services of a bulldozer, and $75.00 for landscaping. Carson personally hauled the dirt, operated the bulldozer and performed the landscaping service.
We find that Carson has no lienable claim for the $25.00 wages paid his employee in connection with the trash hauling work on subject project. In Pringle v. Eanes, 254 La. 705, 226 So.2d 502, the Supreme Court held that a subcontractor who pays his laborers wages is not subrogated to the laborer's claim against the owner, neither does such a laborer have a lien against the owner's property. It follows that Carson's claim must be reduced by $25.00.
Carson's claim for dirt is recognized as materials furnished on the project. The remainder of his claim is for personal services and therefore lienable.
We also find that under the circumstances of this case, Carson's failure to file a notice of lis pendens does not adversely affect his privileged claims. Appellant instituted this executory process foreclosure-concursus proceeding prior to expiration of the time permitted Carson to institute suit to reduce his liens to judgment. Appellant specifically urges herein that a concursus is necessary to avoid a multiplicity of actions, and to insure that the proceeds of the executory process foreclosure sale will be properly ranked and fairly distributed among the various claimants. Appellant also expressly urges that all privileges against the property be cancelled and erased and claimants relegated to recovery from the proceeds of the sale. Carson was cited in this concursus proceeding, and he filed his answer herein on March 13, 1973, within the period allowed for filing of his suit upon his claim. Carson did not file a separate action; neither did he file a notice of lis pendens. The Sheriff's Sale of subject property was made May 16, 1973. The Sheriff's proces verbal, dated May 21, 1973, authorized and directed the recorder of mortgages to cancel and erase all incumbrances against subject property, Appellant's mortgage and Carson's lien included.
The foregoing considered, there was no need for Carson to sue on his lien or intervene in the executory process action. He had been impleaded as defendant in Appellant's concursus proceeding. In such capacity, Carson could have been enjoined by Appellant from prosecuting a separate action to reduce the lien to judgment. See LSA-C.C.P. art. 4660. Any notice filed by Carson after the judgment ordering cancellation of his lien would have been totally ineffective.
Prior to its amendment in 1966, LSA-R. S. 9:4812 required annual reinscription of a lien in order to maintain its efficacy, even pending suit to reduce the lien to judgment. Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566 (1940). As held in Lafayette Woodworks v. Boudreaux, La.App., 255 So.2d 176 (1971), the purpose of the 1966 amendment of Section 4812, above, to require filing of notice of lis pendens, was to obviate the need for annual reinscription of the materialman's lien. Boudreaux, above, reasoned that since such a lien constitutes a cloud on the title of the property involved, notice thereof is required to alert third persons to the existence of the claim.
In this instance, Carson's claim has, by the concursus proceeding and the judgment cancelling the lien, been relegated to the deposit and no longer exists against the property. We find City National Bank of Baton Rouge v. Sunshine Processing Company, Inc., La.App., 209 So.2d 161 (1968), analogous to the case at hand and its reasoning applicable herein. In the cited case, *854 plaintiff instituted suit against defendant on May 16, 1966, to foreclose a mortgage. Judgment was rendered in favor of the foreclosing creditor on June 9, 1966. A writ of fi fa issued June 29, 1966. On August 29, 1966, suit was filed against defendant (Sunshine) on a lien recorded April 4, 1966. On October 18, 1966, the lienholder intervened in the suit by City National and asserted the priority of Intervenor's claim. On October 19, 1966, defendant's property was sold at Sheriff's sale. On June 14, 1967, City National Bank filed a plea of prescription based on Intervenor's failure to reinscribe Intervenor's lien. The court held that the Sheriff's sale of the property subject to lien cancelled Intervenor's lien only and did not affect Lienor's claim against the fund realized from the sale. The court also held that, under the circumstances, failure to reinscribe the lien was a matter of no import.
The present requirement of a notice of lis pendens serves the identical purpose of lien reinscription required by Section 4812, above, prior to its amendment in 1966. In this instance, the Sheriff's sale occurred within a year of recordation of Carson's lien. Carson asserted his lien in Appellant's concursus proceeding within a year of the date the lien was filed. This suffices to preserve the rank of his claim, and render it immune to a plea of prescription predicated upon failure to file a notice of lis pendens.
Under the circumstances peculiar to this consolidated concursus proceeding, Appellant will be cast for all costs considering the amount deposited is insufficient to pay the Wickes and Carson liens and the costs incurred herein.
The judgment of the trial court is amended to recognize the claim of Charles Carson in the sum of $260.00, and as thus amended, affirmed. All costs to be paid by Appellant, Norman S. Hunt, M. D.
Amended and affirmed.