341 So.2d 1331 (1976)
CITY BANK & TRUST COMPANY, Plaintiff and Appellant,
v.
CANECO CONSTRUCTION, INC., Defendant and Appellee.
No. 5704.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1976.
Rehearing Denied March 2, 1977.
Gahagan & Gahagan, by Henry C. Gahagan, Jr., Natchitoches, for plaintiff and appellant.
Kelly, Seaman & Ware, by Richard N. Ware, Natchitoches, for intervenor-appellee.
Watson, Murchison, Crews & Arthur, by Daniel T. Murchison, Natchitoches, for intervenor and appellee.
Before CULPEPPER, WATSON and GUIDRY, JJ.
CULPEPPER, Judge.
This is a companion case to Franklin v. Caneco Construction, Inc., 341 So.2d 1339, in which a separate decision is being rendered *1332 by us this date. In the present case, City Bank & Trust Company sued to foreclose by executory process on a mortgage from defendant Caneco covering a newly constructed residence. Several labor and material lien claimants intervened. W. H. Franklin also intervened, claiming a vendor's lien on the lot on which the house was built and, in the alternative, seeking dissolution of the sale to Caneco for its failure to pay the purchase price. In the companion suit also, Franklin sought to dissolve the sale to Caneco for failure to pay the purchase price, and the Bank intervened.
The property was sold at sheriff's sale to City Bank & Trust Company on March 24, 1976. After a trial of the consolidated cases was completed on April 1, 1976, the trial judge held the Bank's mortgage was not recorded until after construction of the residence had commenced, and judgment was rendered on the various labor and material liens accordingly. As to Franklin's vendor's lien and his suit to dissolve the sale, the judge rejected both demands on the grounds that Franklin could not introduce parol evidence to vary the statement in the deed to Caneco that Franklin had received the cash price of $5,000. The plaintiff Bank and the plaintiff Franklin appealed.
Franklin's intervention in the present suit and his separate suit to dissolve the sale present factual and legal issues different from those presented by the labor and material liens. Accordingly, our discussion of this case will be divided into (1) Franklin's intervention and his suit to dissolve the sale, followed by (2) a discussion of the labor and material liens.

FRANKLIN'S INTERVENTION AND HIS SEPARATE SUIT TO DISSOLVE
The evidence shows that by a cash sale deed dated August ____, 1975, Franklin sold the residential lot in question to Caneco. The printed act of sale, in authentic form, contains this recitation:
"This sale is made for a consideration of the sum of ($5,000) Five Thousand and No/100 ... Dollars cash in hand paid, the receipt of which is hereby acknowledged."
In addition to other necessary signatures, the signature of plaintiff, W. H. Franklin, appears on the act of sale.
To finance construction of the house, Caneco executed a promissory note for $36,000 in favor of City Bank secured by a collateral mortgage affecting the subject property, the note and mortgage being dated August 4, 1975. The cash sale deed was properly recorded at 1:32 p.m. and the mortgage at 1:33 p.m. on August 12, 1975.
Subject to City Bank's timely objection at trial, Franklin was allowed to introduce evidence for the purpose of proving the nonpayment of the purchase price. This evidence included testimony by Franklin to the effect that at the time he signed the deed he received only $500 in cash and the remainder of the purchase price, $4,500, was in the form of a check drawn on Caneco's account in City Bank. Franklin testified he presented this check to City Bank for payment on two occasions, August 5 and August 7 of 1975, but on both occasions the check was returned to Franklin for lack of sufficient funds in Caneco's account. The check is filed in evidence and corroborates Franklin.
In his written reasons for judgment, the trial court sustained City Bank's objection to the admission of evidence seeking to vary the recital that the entire purchase price was paid in cash. The court then rendered judgment rejecting Franklin's demands in both suits.
Article 2236 of our Civil Code provides:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
Article 2276 of the Civil Code states:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
*1333 These two articles are the basis of the parol evidence rule as it relates to authentic acts. The rule, of course, is subject to many exceptions. See Writing Requirements and the Parol Evidence Rule, a Student Symposium, 36 La.L.Rev. 745 (1975); A. Rubin, Parol Evidence to Vary a Recital of Consideration, 3 La.L.Rev. 427 (1941).
Also germane to our discussion is LSA-R.S. 9:2721, et seq., our Registry Law, which states:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties. Acts 1950, 2nd Ex.Sess., No. 7, § 1.
LSA-R.S. 9:2722 provides:
Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property. Acts 1950, 2nd Ex.Sess., No. 7, § 2.
These statutory provisions and the jurisprudence preceding and following their enactment constitute our public records doctrine. Both the parol evidence rule and the public records doctrine are operative in the present case. See Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 34 Tul.L.Rev. 490, 499-502 (1965).
Franklin, a party to the authentic act, seeks to vary his recited acknowledgment that the full purchase price was paid in cash. A third party relying on the public records, City Bank, opposes introduction of parol evidence to vary this authentic recital of payment and receipt in cash. As previously stated, the deed was recorded before the mortgage. At the time City Bank recorded its mortgage there was nothing in the public records to give notice of the fact that any portion of the price remained unpaid. To the contrary, the record showed an authentic act of sale reciting that the full amount of the purchase price was paid in cash. Under these circumstances, the trial court did not err in excluding parol evidence varying the recital that the full amount of the purchase price was paid in cash to Franklin. The above quoted statutes and the following cases support our conclusion.
Loranger v. Citizens' National Bank of Hammond, 162 La. 1054, 111 So. 418 (1927) was a suit to enjoin the sale of a parcel of ground seized by defendant bank to satisfy its judgment against the plaintiff's husband. Plaintiff claimed ownership of the seized property by virtue of a previously recorded authentic act of sale. The sale was a nullity because it purported to be a prohibited sale between husband and wife. The bank contended, therefore, that title to the property remained in the husband. Plaintiff sought to prove by parol evidence, however, that the intention of the parties was to make a donation inter vivos rather than a sale. Our Supreme Court sustained the bank's objection to this parol evidence, stating:
The conveyance records are the only things to which one dealing with real estate or any real right ever needs to look, under repeated decisions of this court. Baird v. Atlas Oil Co.,146 La. 1091, 84 So. 366.
* * * * * *
To prove by parol evidence a true and sufficient consideration, in order to sustain *1334 the contract made between the parties, is always permissible, where the rights of third parties are not affected thereby. C.C. art. 1900. But to resort to such evidence for the purpose of contradicting or varying the contract entered into, in order to substitute in its place a contract of a dissimilar nature, is plainly reprobated by the textual provisions of our Code.
* * * * * *
The effect of the parol evidence sought to be introduced in this case would be to replace a contract of sale duly recorded, and null and void upon its face, with a new and valid title of a different kind, a donation inter vivos, and, through this means, to transfer property standing in the name of the husband upon the public records to the wife.
One year later, in Gabert v. St. Tammany Yacht Club, 166 La. 57, 116 So. 667 (1928), the court had occasion to synopsize its holding in Loranger when it distinguished the case from the one then before it:
"In [Loranger] the party (the bank) against whom the parol evidence was offered to prove that a recorded instrument purporting to be a sale was in fact a donation was a third party and was held to have had a right to rely upon the public records. The present contest is between the original parties to the transaction in question."
In Baker v. Baker, 209 La. 1041, 26 So.2d 132 (1946) the court held that parol evidence was admissible to show that what purported to be a cash sale was intended by both parties to the act as a pignorative contract or security device. The parol evidence was admitted to show the true nature of the contract. After announcing the court's holding, however, Justice Hawthorne carefully distinguished the factual circumstances of the case from those cases where the rights of third parties are involved:
We concede that plaintiff's objection to the admissibility of parol evidence in this case would have been good had the rights of a third party been involved, and that such evidence would not be permitted to show, to the prejudice of third persons, that the contract, was pignorative in character. Had a third party purchased the property from Ronaldson & Puckett Company, Ltd., such third party's rights would be fully protected, and parol evidence could not be adduced to show that the act of sale by which Ronaldson & Puckett acquired the property (this deed being regular on its face and by authentic act) was not a sale at all but only a pignorative contract or mortgage. Beard v. Nunn, 172 La. 155, 133 So. 429, and authorities therein cited.
Beard v. Nunn, supra, the case distinguished by Justice Hawthorne in Baker v. Baker, supra, involved an authentic act of sale in which the vendor acknowledged receipt of payment of the purchase price. Plaintiff sought to introduce parol evidence to show the purported sale was actually a pignorative contract or security device. The act of sale was recorded and a third party purchased the land relying on the terms of the authentic cash sale deed. The court excluded the parol evidence and clearly defined the rights of third parties to rely on authentic acts contained in the public records, holding:
"... when the vendor acknowledges, in the very act of conveyance, the receipt of the price, that is conclusive; especially as to third persons, and still more especially when that acknowledgment is by public act. R.C.C. Art. 2237. (Emphasis supplied)
" ... it would be subversive of all of the fundamental rules of property to hold that third persons taking deeds at their face value should be subject to secret equities between their own vendor and prior owners of the land."
Considering the authorities cited above, we hold that the parol testimony offered by Franklin to vary the recital that he was paid $5,000 in cash was properly excluded by the trial court. City Bank, as a third party, was entitled to rely on the authentic act as it appeared in the public records. The unsoundness of a contrary holding is *1335 immediately apparent. As Justice St. Paul said in Beard: "... there would be no security whatsoever for purchases of real estate, if they were not entitled to rely upon the title deeds to such property, as being exactly what they purport to be."
The same reasoning applies to mortgagees
relying on recorded titles.
Franklin argues further that since City Bank, as the drawee bank, knew when it recorded its mortgage that the $4,500 check had "bounced", the Bank could not and did not rely on the public records which showed the entire $5,000 had been paid in cash. This argument has no merit. In the landmark case of McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910), our Supreme Court held that despite the third person's actual knowledge of facts contrary to those stated in the public records, the third person is nevertheless entitled to rely on the face of the public records, unless the third person has been guilty of fraud. In the present case, there was nothing on the public records to put City Bank on notice of Franklin's asserted vendor's lien or of his right to dissolve the sale for nonpayment of the purchase price. And no fraud on the part of the Bank is alleged or proved. See also the recent case of Owen v. Owen, La., 336 So.2d 782 in which our Supreme Court reaffirmed the rule that in the absence of fraud, actual knowledge does not negate the third person's right to rely on the public record.
The trial judge relied entirely on Miles v. Miles, 328 So.2d 394 (La.App. 3rd Cir. 1976) and the cases cited therein for the rule that a vendor's acknowledgment in an authentic act of sale that he received a stipulated sum in cash as consideration of the transfer is conclusive as to him unless he alleges, and can prove, that his consent and his signature to the act were procured by fraud, mutual error or force, or unless he can produce a counterletter or show the lack of consideration by answers to interrogatories or requests for admissions of fact. In the present case plaintiff has neither alleged nor proved fraud, mutual error or force, nor has he produced any of the other listed types of proof that the purchase price was not paid. However, we do not rely on this rule alone. We prefer to place our principal reliance on the public records doctrine and on the fact that here we have a third party, the City Bank, who had a right to rely on the act of cash sale which was recorded before its mortgage.
In further support of his argument, Franklin cites Sliman v. McBee, 311 So.2d 248 (La.1975) for the proposition that the sale should be dissolved for nonpayment of the purchase price and the property returned to him, the vendor, free of any mortgage created by the purchaser. In Sliman, the court was faced first with the question of whether the plaintiff waived her right to rescind the sale for nonpayment of the purchase price by executing a deed which recited that the notes representing the purchase price were, and would remain, the personal obligation of the makers. The deed further recited: "... no lien shall exist on the lots herein sold securing payment of said notes." The court held, "... [that] in agreeing that the notes would remain a personal obligation unsecured by a lien, Mrs. Sliman simply forfeited a device securing the buyer's obligation to pay.... She did not forfeit the right to enforce payment, much less the independent, alternative right of dissolution." The court then dissolved the sale for nonpayment of the purchase price and returned the property to the vendor free of certain mortgages created by the purchaser.
The Sliman case is readily distinguishable from the present one. Sliman did not involve questions of admission of parol evidence to vary the terms of an authentic act of sale, nor did it involve a third party who had justifiably relied on the public records. Instead, Sliman involved a credit sale which appeared as such on the public records. The public records, despite the recited waiver of lien rights, were sufficient to put third parties on notice that the transaction was a credit sale in which a portion of the price remained unpaid. Thus, the face of the records revealed that the plaintiff might *1336 some day exercise the right to dissolve the sale for nonpayment of the purchase price. In the present case, on the other hand, the Bank executed its mortgage in reliance on the public records, which showed conclusively that the entire purchase price of $5,000 was received by Franklin "cash in hand". Therefore, Franklin's reliance on the Sliman case is unfounded.
Having disposed of Franklin's contentions, we move now to a consideration of the issues raised by the labor and material liens.

LABOR AND MATERIAL LIENS
The substantial issues regarding the labor and material liens are: (1) Did City Bank record its mortgage after work was begun or material furnished for construction of the subject home? (2) Can a contractor file a lien in his name for the wages he paid to his employees who performed labor on the construction project, or, stated differently, is the laborer, himself, the only person who may file a lien for the cost of his labor?
A brief review of some of the previously stated facts is appropriate. On August 4, 1975, Caneco Construction Company, Inc. (Caneco) purchased by cash sale deed a lot in Natchitoches Parish for the purpose of constructing a residence. To finance construction of the house, Caneco executed a promissory note for $36,000 in favor of City Bank, secured by a collateral mortgage affecting the subject property. The deed was properly recorded at 1:32 p.m. and the mortgage at 1:33 p.m. on August 12, 1975.
Employees of Caneco testified that they began work at the homesite as early as August 5, 1975. On that date, stakes and foundation form materials were placed on the lot. On the following day, August 6, the house location was staked off and a tractor was used to scrape the surface of the lot. No other work was performed at the jobsite until the morning of August 12, 1975. On that date, Caneco employees arrived at the site at 7:00 a.m. and worked until 9:00 or 10:00 a.m. Foundation forms consisting of 2 inch by 12 inch wooden planks were positioned and the foundation area was prepared for the concrete slab. Some digging was done in order to properly position these foundation forms. When properly positioned, the form boards protruded about 12 inches above the ground. In addition, 18-inch deep footings were dug along three sides of the foundation area. These footings were the deepest excavations at the homesite. The employees testified that a layman viewing the jobsite from the street on the morning of August 12, 1975 would know that construction had commenced.
Certain of Caneco's payroll records and time cards were introduced into evidence. These records showed that Caneco employees performed work at the jobsite on August 5th, 6th and 12th. A total of 13½ man-hours of labor were charged to the construction project as of August 12.
Caneco contracted with various other firms and individuals to supply the labor and materials necessary for certain aspects of the construction. No contract or bond was recorded by Caneco in connection with the construction, however.
An affidavit of completion was filed by Caneco on January 12, 1976. Caneco defaulted on its loan payments and on payments due to materialmen and laborers. Subsequently, several of those who had contracted with Caneco to supply labor and materials for various aspects of the construction project filed liens. City Bank instituted foreclosure proceedings by executory process against Caneco. Several lien claimants intervened in the foreclosure proceeding asserting their privileges. The parties concede that all of the lien claimants who intervened filed their liens within the 60-day period provided by LSA-R.S. 9:4812. A writ of fifa issued for sale of the subject property. City Bank bought in the property at sheriff's sale for $29,000. City Bank and the lien claims are now competing for the proceeds of the sale.
The liens contested by City Bank in this appeal are the following:
(1) A lien in the amount of $1,524 filed by Nakatosh Paint Company, Inc., a painting *1337 contractor. Included in Nakatosh's lien is a charge for labor performed by its employees on the construction project and a charge for materials supplied.
(2) A lien filed by Ford's Carpet Service, Inc., a flooring contractor, in the amount of $1,792.11. Included in the full amount of the lien is a charge for labor performed by Ford employees on the construction project and a charge for materials supplied by Ford.
(3) A lien filed by Jeff Guilliams, an electrical contractor, representing amounts owed to him for labor performed by him and by his employees at the jobsite and for materials supplied by him.
Where, as in the present case, there is no recorded construction contract, LSA-R.S. 9:4812 provides that "any person furnishing service or material or performing any labor on said building or other work" may preserve a privilege against the land and construction thereon by timely and properly filing a lien affidavit. This statute provides further that "The said privilege shall be superior to all other claims against the land and improvements except taxes, local assessments for public improvements, a bona fide mortgage or a bona fide vendor's privilege, ... if the vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished."
The claim of a laborer for his wages is accorded an exceptional status by the last sentence of R.S. 9:4812 as follows: "The claim for wages of a laborer for work done by him on any building, shall, when properly presented and recorded by him in accordance with the provisions of this Sub-part, preserve in his favor a privilege on the land and improvements which will prime the right of mortgagees or vendors." Thus, the privilege of the laborer for his own wages, primes mortgages and vendor's privileges regardless of the time of recordation.
In the present case, if City Bank recorded its mortgage after work or labor was begun or materials were furnished at the jobsite, all persons who properly and timely filed liens under the terms of R.S. 9:4812 would preserve privileges on the subject property superior to that of the mortgagee, City Bank. See Hunt v. La Chere Maison, 316 So.2d 850 (La.App. 1st Cir. 1975).
The critical factual question is whether work or labor was begun or material furnished at the jobsite before City Bank recorded its mortgage at 1:33 p.m. on August 12, 1975.
LSA-R.S. 9:4819 provides the following definition:
"(A) The phrase, `before the work or labor is begun or any material is furnished', as used in R.S. 9:4801-9:4817, both inclusive, shall be defined as follows:
"(1) In the event that the work or construction is new, then `work or labor is begun or material is furnished' is defined as having begun when either excavation has been started so that it can be observed on inspection, or material has been furnished and delivered to the job site which is visible upon inspection and which material when delivered had a value in excess of one hundred dollars provided, however, that test piling shall be excluded from this definition."
Under the evidence set forth above, the trial court concluded that City Bank did not bear its burden of proving its mortgage was recorded before work began or materials were furnished. The record clearly supports this factual conclusion. Therefore, all persons who timely and properly filed liens under the terms of R.S. 9:4812 acquired privileges which prime the rights of the mortgagee, City Bank.
There is no question that all of the lien claimants in the present case timely filed their liens. The legal issue presented is whether a lien filed by a contractor for the cost of labor performed by his employees on the construction project may be recognized and enforced under the terms of R.S. 9:4812. City Bank argues that the only person entitled to file a lien for labor performed on a construction project is the laborer, himself. In support of this argument, City Bank cites Pringle-Associated Mortgage Corporation v. Eanes, 254 La. *1338 705, 226 So.2d 502 (1969). We find no merit in City Bank's argument.
The Pringle case is factually distinguishable from the one now before us and it involved different legal issues. An analysis of R.S. 9:4812 and a discussion of the Pringle case will follow. Three classes of lien claimants are recognized by R.S. 9:4812. They are (1) persons who furnish service, (2) persons who furnish materials and more (3) persons who perform labor. A contractor furnishes services when his employees perform labor at the jobsite. Such a contractor is, within the meaning of the statute, a person entitled to preserve a privilege on the subject property by timely filing a lien. The courts have recognized the right of a contractor or subcontractor to file a lien for the cost of labor performed by his employees at the jobsite. See for example Davis-Wood Lumber Company, Inc. v. Wood, 224 La. 825, 71 So.2d 125 (1954); Executive House Building, Inc. v. Demarest, 248 So.2d 405 (La.App. 4th Cir. 1971); Windham Woodwork & Supply Company v. Hopkins, 122 So.2d 106 (La.App. 2d Cir. 1960).
As we said before the Pringle case is distinguished from the present one, as it arose from a dissimilar factual setting and involved different legal issues. In Pringle, the issue was whether three subcontractors, who paid their employees for labor performed on a building project as their wages became due, were legally subrogated under LSA-Civil Code Art. 2161(1) and (3) to the superior privilege granted to laborers for their wages by LSA-R.S. 9:4801(D) and the last sentence of R.S. 9:4812. The plaintiff-mortgagee, Pringle, was competing with the three subcontractors for the proceeds derived from the public sale of the subject property. The laborers, themselves, had not filed liens. Pringle had properly recorded its mortgage before any labor was begun or materials furnished on the subject property. Under the circumstances, the only class of lien claimants under the Private Works Act who would be accorded a privilege superior to that of Pringle, the mortgagee, would be laborers who timely and properly filed liens for the amount of their unpaid wages. The three lien claimants sought by subrogation to advance the rank of their privilege from a position inferior to Pringle's mortgage to a position superior to it. On rehearing, the Supreme Court affirmed the Court of Appeal holding that subcontractors who paid wages to their laborers as they became due were not subrogated to the superior privilege granted to laborers by the Private Works Act. The court did not hold that contractors who furnish labor for construction projects are not entitled to a privilege for the wages paid their employees. The Pringle decision involved only principles of subrogation. Thus, the Pringle case has no application to the present one.
We are aware of a possible conflict between our interpretation of Pringle and that of the First Circuit in Hunt v. La Chere Maison, 316 So.2d 850 (La.App. 1st Cir. 1975). There, the court cited the Pringle case as authority for its holding that a contractor has no right to a privilege for wages paid by him to his employees. We respectfully disagree with this interpretation of Pringle and the applicable provisions of LSA-R.S. 9:4812.
All of the liens involved in the present case were properly and timely filed. In addition, the lien claimants sufficiently proved the amounts of their claims. Since City Bank did not record its mortgage until after work began, its privilege on the property is inferior to the privileges reserved by each of the intervening claimants for services, materials and labor furnished. Therefore, we affirm the judgment of the trial court recognizing and enforcing the full amount of each of the subject liens.
We note that the total amount of all the liens filed by laborers and by contractors who furnished labor and materials does not exceed the price City Bank paid for the property at the sheriff's sale. Since all of the liens for services, materials and labor can be satisfied from the proceeds of the sheriff's sale, it is not necessary for us to decide whether, under the circumstances of the present case, the liens filed by laborers for their wages prime the liens filed by *1339 contractors for labor and material furnished. See the Comment, Laborers and Materialmen's Privileges under Louisiana Building Law, 44 Tul.L.Rev. 326, which discusses this problem.
For the reasons assigned, the judgment of the district court is affirmed. All costs of this appeal are assessed against City Bank & Trust Company.
AFFIRMED.