SAVOY, Judge.
This is an appeal by plaintiff from an adverse judgment rendered by the district court.
The record in the instant case reveals that plaintiff was in the retail business installing air conditioning and heating equipment. At the request of Hemphill and Broussard, general contractors, plaintiff installed a heating unit in a residence owned by defendant and being constructed by the general contractor. Shortly thereafter he filed a lien against the property for the amount which he alleged was due on said job. Thereafter he filed a suit to enforce his .lien on said property. Defendant answered the suit admitting that a contract for the installation of air conditioning and heating equipment in the sum of $1,975.00 had been entered into between the general contractors and plaintiff and stated that the installation had not. been completed in that *170 'the air conditioning unit had not been installed in the residence belonging to de'fendant; that defendant secured the services of another contractor to install said air conditioning unit; that the general contractors had paid plaintiff the sum of $1,-575.00 to apply on the contract; that the total cost of the heating installation was $1,116.00; and that defendant, by way of reconventional demand, prayed that he secure a judgment for the sum of $459.00, the difference between the amount paid to plaintiff and the cost of the installation of the heating unit.
The evidence shows further that at the time the sum of $1,575.00 was paid to plaintiff, there was a notation on the check that said sum was being paid on the Venor job performed by plaintiff for the general contractors.
The record reflects further that at the time the above sum was paid to plaintiff by the general contractors, the only job they were working on was the residence owned by defendant, and that plaintiff had knowledge of this fact. He testified that he knew that the general contractors were in financial trouble, and that he told them that unless they paid the indebtedness due him on the Venor job, he would file a lien against said property; that the general contractors told him they were to receive shortly some money on the job which they were doing for defendant, and out of this sum they would pay plaintiff for the Venor job.
Plaintiff contends that under the provisions of Article 2163 of the LSA-Civil Code of Louisiana a debtor of several debts has a right to declare, when he makes a payment, the debt he means to discharge.
In Grand Lodge, Benevolent Knights of America v. Murphy Construction Co., 152 La. 123, 92 So. 757, the Supreme Court said:
“In general, therefore, the debtor may impute his payments as he pleases, and cannot be controlled therein by a surety (Robson & Allen v. McKoin, 18 La. Ann. 544), although that rule may be subject to some exception, as where the payment, to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with the debtor that the money be diverted and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties.” (Citations omitted.)
In the Grand Lodge, Benevolent Knights of America v. Murphy case, supra, the Supreme Court said that prior to that case, the court did not have occasion to pass upon imputation of payments in connection with •claims of furnishers of materials under building contracts, but that the Court of Appeal for the Parish of Orleans had occasion to do so in the case of Roca v. Caruso, 7 Orleans App. 451.
In the Roca v. Caruso case, supra, the court stated:
“The statute under consideration has made furnishers of building materials a favored class among merchants, but they should not be permitted to abuse the legislative favor. A contractor has no right either in law or in morals to make a payment with money earned in one contract and have that payment imputed to some other account even though older, whilst the debt incurred by him in connection with such contract is still unpaid. Simple good faith would require that he have such payment imputed to the account which grows out of the contract under which the money was earned. To follow any other course would be manifestly to prejudice the right of his surety, if there be one, or of the owner who has trusted him.
“And it is equally unfair for a furnish-er of material, knowingly to receive of a contractor money paid to the latter under one contract, and impute the same to some other account whilst the debt incurred in connection with the ' contract remains unpaid. By that sim- *171 pie system any furnisher of materials ■ would have it in his power to prejudice of the rights of one surety or owner to the advantage of another, as his pleasure or interest might suggest. He might even recoup losses due to his own negligence or laches, by imputing such payments to some worthless account, and in due course falling on a new surety or owner for the whole amount of the new account.
“We are of opinion that payments made with money earned on one contract should be imputed first to the debt incurred in connection with that contract. Equity requires it, and no law prevents.
“The statute under consideration is a special one, and sui generis; the provisions of our Civil Code, regulating the imputation of payments have no application to the peculiar conditions brought about by this statute, and wholly unforeseen by the authors of the Code. (Civil Code, Art. 2.) Articles 21 and 1965 of that Code are much more applicable.”
It has also been held under the jurisprudence of this State that where a general contractor owes a sub-contractor or materi-alman two (2) debts, one of which is a bonded job, neither the debtor nor the creditor, if he has knowledge of th'e source of the money, can impute payment of this money received from the bonded job to another debt owed to the sub-contractor or materialman. Lake Charles Electric Co. v. Globe Indemnity Co., (La.App., 3 Cir., 1961), 128 So.2d 780, and cases cited therein.
This Court is of the opinion that it is immaterial whether a legal fraud is being committed on a surety or on a homeowner, the results are the same, namely, injury to a third party.
Under the above cited jurisprudence, since both the general contractor and the sub-contractor on the Gallier residence knew that the funds paid by the contractor' to the plaintiff sub-contractor were from funds which Gallier .had given the contractor to apply to his job, this Court is of the opinion that plaintiff cannot recover from Gallier the amount of his lien on the Gallier job in the sum of $1,116.00.
Having disposed of the original demand of plaintiff, we will next consider the reconventional demand filed by Gallier.
Counsel for Baudoin states that there is no basis for the trial judge awarding Gallier the amount of $459.00 claimed by him against Baudoin. Gallier arrived at the amount of $459.00 by taking the sum of $1,575.00, which the general contractor had paid Baudoin on the Venor job, and subtracting therefrom the amount claimed by Baudoin on the Gallier job, which is $1,116.-00; and contended he was entitled to a refund of $459.00 since this sum should have been applied by the general contractor to pay debts due on the Gallier job.
The record reveals that the only amount. due to the sub-contractor on the Gallier job was the amount of $1,116.00, the amount of the lien subsequently filed and sought to be recovered by this suit. While the cited jurisprudence prevents the imputation of Gallier’s funds insofar as they are not first applied to extinguish the amount due on the Gallier job, we have been cited no authority which permits Gallier to recover from the sub-contractor any excess paid to him over this indebtedness. Once the in-' debtedness had been satisfied, the general contractor was at liberty to use the balance of the funds received from Gallier for any purpose which he desired. We are of the opinion that the trial court was in error in allowing the defendant the amount claimed in his reconventional demand.
For the reasons assigned, the judgment of the trial court awarding Gallier the sum of $459.00 is reversed and set aside, and his reconventional demand is dismissed. In all other respects, the judgment of the trial court is affirmed. Appellant is to pay all costs incurred in this Court.
Affirmed in part and reversed in part.