353 So.2d 1132 (1977)
William B. RAGSDALE et ux., Plaintiffs-Appellants,
v.
J. E. HOOVER, d/b/a Hoover Masonry Contractor, et al., Defendants-Appellees.
No. 13385.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1977.
Rehearing Denied January 16, 1978.
Writ Refused February 24, 1978.
*1133 Wilkinson, Carmody & Peatross by Charles B. Peatross, Shreveport, for plaintiffs-appellants.
Loret J. Ross, Shreveport, for defendants-appellees.
Before BOLIN, PRICE, MARVIN, JONES and WYCHE, JJ.
En Banc. Rehearing Denied January 16, 1978.
PRICE, Judge.
Plaintiffs, William and Betty Ragsdale, have appealed the judgment dismissing their demands and recognizing the validity of the lien on their property in favor of J. E. Hoover, d/b/a Hoover Masonry Contractor.
Plaintiffs instituted a concursus proceeding against numerous subcontractors seeking cancellation of liens filed against their residence in Spring Lake Estates. All defendants except J. E. Hoover have compromised or dismissed their alleged claims thereby limiting the issue on this appeal to the validity of the Hoover lien. To comply with the mandate of Art. V, § 8(B), of the Louisiana Constitution of 1974, the case was reargued before a panel of five judges.
The pertinent facts are as follows: On June 3, 1968, plaintiffs made an agreement with William A. Colquitt, a contractor, for the construction of a one-story residence upon Lot 350, Spring Lake Estates, Unit # 4, in accordance with certain plans and specifications. Upon completion of the improvements, Colquitt, who was then owner of the lot, was to convey the property to plaintiffs for the sum of $51,377. The contract was not recorded, nor was a bond furnished.
Plaintiffs recorded their affidavit of completion and acceptance of said work in the Mortgage Records of Caddo Parish on May 29, 1969. A deed was executed and recorded conveying title to them on this date.
For a period of several years prior to the filing of the subject lien, Hoover performed all of the masonry subcontracts for Colquitt in the construction of numerous homes in Shreveport. During 1967 Colquitt began falling behind in his payment of job contracts to Hoover and the number of completed houses for which Hoover had not been paid progressed to approximately five jobs. Hoover was aware that Colquitt's financial condition was becoming more critical in the late spring of 1969, and on June 5, 1969, Hoover filed liens on several of the more recent jobs he had completed for Colquitt, including plaintiffs' residence. On the succeeding day Colquitt paid Hoover $1,820.03 on the indebtedness, and Hoover cancelled the liens. Hoover applied this amount to payment on one of the older jobs on which the lien period had expired. A few days thereafter Colquitt filed a voluntary petition in bankruptcy which precipitated the filing of numerous liens on plaintiffs' *1134 property. Hoover refiled his lien in the sum of $1,566.60 on June 23, 1969.
Plaintiff filed suit to cancel all liens on July 31, 1969, and defendant filed his reconventional demand to enforce the lien on August 20, 1969.
On June 22, 1970, Hoover filed a notice in the mortgage records that he had filed suit to enforce his lien.
At the time of the hearing on this concursus proceeding, plaintiffs filed an exception of prescription and peremption alleging that the notice of suit filed by Hoover did not comply with the provisions of La.R.S. 9:4812, and therefore, the liens had prescribed. The trial judge overruled the exception and after trial on the merits awarded judgment recognizing the validity and ordering the enforcement of Hoover's lien on plaintiffs' property.
By their specifications of error, plaintiffs present four issues on appeal: (1) Whether or not defendant's notice of lis pendens complies with R.S. 9:4812, (2) Whether the lien statute restricts the privilege to labor personally performed by the claimant, or whether it allows one to claim the privilege for the labor of his employees, (3) Whether defendant has borne his burden of proof to establish his right to the lien, and (4) Whether Hoover has improperly credited payments from Colquitt which would estop him from asserting a lien against plaintiffs' property.
COMPLIANCE WITH LA. R.S. 9:4812
Plaintiffs contend Hoover's lien has prescribed because the notice of suit required by La. R.S. 9:4812 does not strictly comply with the provisions of the statute because the date of filing of suit is incorrect, the amount of the claim is incorrect, and the registry information is incomplete.
The pertinent part of R.S. 9:4812 provides:
* * * The effect of the recordation of the claim shall cease and the privilege preserved by the recordation shall perempt unless a notice of filing of a suit (giving the name of the court, the title and number of the proceedings, and date of filing, a description of the property and a reference to the recorded claim), on said claim is recorded within one year from the date of the recordation of the inscription of said claim. * * *
The notice filed by defendant gives the date of filing of the concursus by plaintiffs and not the date of defendant's reconventional demand. The purpose of the notice of suit as required by the statute is to afford third persons knowledge of a cloud on the title to the subject property. Lafayette Woodworks v. Boudreaux, 255 So.2d 176 (La. App.1st Cir. 1971). This purpose is fulfilled by giving the date of the filing of the concursus.
The statute does not require the notice to list the registry, book, and page number of the lien, nor does it require explicit and exact detail of the claim or lien. It merely requires a reference to the recorded claim, which was done in this instance by stating the approximate amount of the lien. The misstatement of the amount by $.60 is inconsequential. Although the statute is stricti juris and must be interpreted rigidly, strict construction cannot be so interpreted as to permit purely technical objections to defeat the real intent of the statute. Alside Supply Company v. Gervais, 303 So.2d 584 (La.App.4th Cir. 1974), writ denied 305 So.2d 545.
SUBCONTRACTORS RIGHT TO CLAIM LIEN FOR WORK OF EMPLOYEES
Plaintiffs urge that a subcontractor who furnishes labor through his employees, but who does none of the labor himself, cannot recover under a lien for labor, citing Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (1969). Pringle was concerned with the right of a subcontractor to be subrogated to the superior position afforded a laborer and prime a prior recorded mortgage. There is a division of authority on whether Pringle can be interpreted as precluding a subcontractor from claiming a privilege for "furnishing services" for the cost of the labor performed by his employees in the construction. *1135 The First Circuit has denied such a claim on the basis of the Pringle decision. Hunt v. La Chere Maison, Inc., 316 So.2d 850 (La.App.1st Cir. 1975). The Third Circuit under circumstances analogous to this case has upheld the privilege of the subcontractor whose employees performed labor on the jobsite. City Bank & Trust Co. v. Caneco Const., Inc., 341 So.2d 1331 (La. App.3rd Cir. 1976). We think City Bank is a proper interpretation of Pringle and reaches a result in keeping with the purpose of the lien statute. The affidavit of the claimant which describes the claim as "labor furnished" is sufficient to bring the claim within the purview of "services furnished" as provided in the statute.
SUFFICIENCY OF PROOF
Plaintiffs next contend that Hoover did not prove that he furnished the labor for which he filed his lien. By his own testimony, Hoover established he had an oral contract with Colquitt to do the masonry work on plaintiffs' house, and that he had been bricking homes for Colquitt during the past four or five years. He offered records chronologically listing the jobs done for Colquitt, the dates thereon, and the amount charged on each job. The Ragsdale job is included in those records. He also introduced his accounts receivable ledger which includes plaintiffs' residence showing the date, charges, and invoice number of that job. Hoover's exhibit, H-4, lists each of his employees, the jobs on which they worked, the hours on each job, and the respective pay therefor. The worksheet reveals eight employees who worked over twenty hours each on the Ragsdale job. Finally defendant introduced the cancelled checks of those employees for the pay period covering this job.
This evidence is sufficient to show Hoover furnished the labor he claims payment for on plaintiffs' residence.
IMPUTATION OF PAYMENT AND ESTOPPEL
Plaintiffs lastly contend that Hoover should not be allowed to enforce the lien because he allowed Colquitt to fall behind in payment for previously completed jobs and in doing so enabled Colquitt to expose unsuspecting current purchasers of residences to lien claims on their property although they had paid Colquitt the contract price.
The facts show Colquitt had used Hoover for brickwork on homes he had under construction from 1966 through 1969. During 1968 and 1969, at any given time, Colquitt had about twelve jobs underway which were at various stages of construction. When Hoover finished the brickwork, he would bill Colquitt for that particular job. Colquitt would finish the entire job usually two to six months later. By spring of 1969, Colquitt owed Hoover for five or more jobs which Hoover had earlier completed, some of which were yet within the lien period.
Plaintiffs alleged at trial and contend on appeal that as the various homeowners paid Colquitt, he would pay Hoover and other subcontractors. The subcontractors would then apply the money, not to the job just closed out, but to a previous job on which the lien period had expired. The lower court did find that the subcontractors had extended credit to Colquitt and in effect had "propped him up financially," but did not find facts from which Hoover could be found to have had actual or implied knowledge as to the source of Colquitt's money as required in the cases relied on by plaintiffs. Duffy v. Roman, 209 So.2d 502 (La.App.4th Cir. 1968), and Baudoin v. Gallier, 153 So.2d 169 (La.App.3rd Cir. 1963). We find no error in this finding on the record before us. Colquitt made the following payments to Hoover with a check designating payment for the particular job for which it was to be applied from May 1968 to June 1969:

May 31, 1968 Chapman Residence $1,952
July 1, 1968 Hitchcock Residence 824
July 10, 1968 Bill Hamm Residence 2,525
Sept. 9, 1968 Schober Residence 1,652
Oct. 10, 1968 Myatt Residence 2,120
Nov. 26, 1968 Burch Residence 2,475
Dec. 18, 1968 Floyd Miller Residence 1,553
Jan. 20, 1969 Watts Residence 2,970
March 21, 1969 Joe Hadley Residence 1,523
April 24, 1969 Willis Meadows Residence 3,496
June 6, 1969 G. R. Rudolph Residence 1,820

*1136 Plaintiffs made no direct payment on their contract to Colquitt after October 4, 1968. Colquitt did not draw against the interim construction loan on this job after September 3, 1968. Hoover completed his work on April 16, 1969. There was no payment of funds directly from plaintiffs to Colquitt at the time title was transferred to them on May 29, 1969. The closing attorney paid the interim construction mortgage and notified Colquitt he could have the remaining balance of the purchase price. Colquitt did not get the balance prior to filing bankruptcy and it is presently being held in escrow by the attorney.
Under these circumstances the trial court was correct in refusing to apply the principle of Duffy and Baudoin because whatever the source of funds Colquitt used to pay Hoover, the source is not shown to have been plaintiffs' residence.
For the foregoing reasons, the judgment is affirmed at appellants' costs.