559 So.2d 810 (1990)
C & J CONTRACTORS
v.
AMERICAN BANK & TRUST CO., et al.
BARBER BROTHERS CONTRACTING CO., INC.
v.
SANTA MARIA LAND COMPANY, et al.
ANDERSON DUNHAM, INC.
v.
SANTA MARIA GOLF CLUB, et al.
GLOBE HEATING, PLUMBING AND AIR CONDITIONING, INC.
v.
SANTA MARIA GOLF CLUB, et al.
Herschel HOFFPAUIR, etc.
v.
SANTA MARIA MANAGEMENT CORP., et al.
The BOLTON CO., INC.
v.
SANTA MARIA GOLF CLUB, et al.
BATON ROUGE LUMBER CO., INC.
v.
SMITH AND DUPREE DEVELOPMENT CORP., et al.
Nos. CA 88 1728CA 88 1734.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Concurring and Dissenting Opinion March 1, 1990.
Rehearing Denied May 15, 1990.
Writs Denied June 22, 1990.
*811 Charles Watts, Baton Rouge, for plaintiff-appellee C & J Contractors, Inc.
Guy Modica, Baton Rouge, for plaintiff-appellee Anderson-Dunham, Inc.
*812 Rodolfo J. Aguilar, Jr., Baton Rouge, Paul Anderson, New Orleans, for defendant-appellant American Bank and Trust Co.
Lawrence Durant, Baton Rouge, for plaintiff-appellee The Bolton Co., Inc.
John Fetzer, Baton Rouge, for plaintiff-appellee Barber Bros. Contracting Co.
James Ross, Baton Rouge, for plaintiff-appellee Herschel Hoffpauir d/b/a Herschel Hoffpauir & Associates.
Craig Kaster, Baton Rouge, for plaintiff-appellee Globe Plumbing Heating & Air Conditioning, AAA Rental-All, Inc., RL Buckle Co., Inc., Montgomery Elevator, RLB Hollow Metal and Specialty Co., and Vulcraft.
Lee Herrinton, Baton Rouge, for defendant-appellee Santa Maria Golf Club.
Martin Schott, Baton Rouge, for defendant-appellee Ronald J. Smith, and Charles B. Dupree, Jr.
Carey Holliday, Baton Rouge, for defendant-appellee Kesler Intern. Corp.
Ann Halpen, Baton Rouge.
William Finn, New Orleans.
John Brady, Baton Rouge, for plaintiff-appellee Baton Rouge Lumber Co., Inc.
Before EDWARDS, LANIER and FOIL, JJ.
Concurring and Dissenting Opinion of Judge Lanier March 1, 1990.
EDWARDS, Judge.
American Bank and Trust Company (Am-Bank) appeals the judgments of the trial court, which held that numerous liens were superior to AmBank's mortgage. We affirm in part and reverse and remand in part.
In 1985, Santa Maria Golf Club Partnership (Santa Maria) contracted for the construction of a golf course on Santa Maria property. In the summer of 1985, C & J Contractors, Inc. (C & J) began the work of building the golf course, including digging lakes and constructing tees, fairways, greens, and bunkers.
AmBank holds a collateral mortgage note, dated January 2, 1986, in the sum of ten million dollars, secured by a collateral mortgage, of the same date, on the Santa Maria property. The collateral mortgage was recorded January 2, 1986. AmBank obtained a site inspection or "no work" affidavit from a registered land surveyor, which attested that he had inspected the immovable property on January 3, 1986, and that, as of that date, work had not commenced and materials had not been placed on the site. The affidavit was recorded on the same day.
During 1986, liens were filed against the property by:
1. C & J;
2. Barber Brothers Contracting Co., Inc. (Barber);
3. Anderson Dunham, Inc. (Anderson);
4. Globe Heating, Plumbing and Air Conditioning, Inc. (Globe);
5. R.L. Buckle Company, Inc. (Buckle);
6. Central Erectors, Inc. (Central);
7. R L B Hollow Metal & Specialty Company, Inc. (RLB);
8. AAARent-All, Inc. (AAA);
9. Vulcraft;
10. Montgomery Elevator Company (Montgomery);
11. Herschel Hoffpauir d/b/a Herschel Hoffpauir and Associates, Architect (Hoffpauir);
12. The Bolton Co., Inc. (Bolton);
13. LeBlanc's Tree & Stump Removal, Inc. (LeBlanc);
14. Baton Rouge Lumber Company, Inc. (Baton Rouge Lumber); and,
15. Kesler International Corporation (Kesler).
The lienholders also filed suits asking for judgments in their favor in the full sums owed and that the privileges on the property be recognized.
C & J filed an action for declaratory judgment on December 8, 1986, against multiple parties appearing to hold security interests in the Santa Maria land. C & J sought a determination of the ranking of the liens. All of the above-named lienholders were either named defendants in the *813 suit, had their suits seeking recognition of the privileges consolidated with the suit for declaratory judgment, or both. The principal defendant on the ranking issue was AmBank. The trial court rendered judgments in favor of some of the lienholders recognizing their liens. AmBank was notified of a May 11, 1988, hearing during which stipulations were entered into by several lienholders and Santa Maria. The hearing resulted in stipulated judgments. AmBank did not attend, but agreed to submit the ranking issue to the trial court.
The trial court, by judgment rendered on July 12, 1988, and signed on July 18, 1988, held that the liens of C & J, Barber, Kesler, Anderson, Globe, AAA, LeBlanc, Buckle, RLB, Baton Rouge Lumber, Bolton, and Hoffpauir "to the extent those liens have been perfected pursuant to the provisions of the Private Works Act ..." were "superior to that of the mortgage held by American Bank...." In its written reasons for judgment, the trial court found that Am-Bank had actual knowledge that the construction of the golf course had begun prior to the recordation of the mortgage. Therefore, the "no work" affidavit could not be relied upon by AmBank. The court agreed with AmBank's argument that work done in preparation for the construction does not establish a privilege pursuant to LSA-R.S. 9:4808(C). However, the trial court also found that "[t]he `dirt work' done before January 2, 1986, was not done in `preparation for the construction ...', but was the actual work performed for the construction of the golf course." By amended judgment, signed on November 18, 1988, the trial court added three lienholders, Montgomery, Vulcraft, and Central, that had been inadvertently left out of the July 18 judgment.
AmBank appeals the judgments of July 18th and November 18th. Baton Rouge Lumber filed a motion to dismiss the appeal. The motion is denied.[1]
AmBank makes the following arguments:
1. AmBank did not have actual knowledge that the work had begun;
2. The sworn statements of Frank Martty, Ronald Smith, and Charles Dupree were improperly considered by the court in rendering its decision;
3. AmBank should be allowed to rely on the "no work" affidavit;
4. The "dirt work" done by C & J did not constitute work begun and did not accord a privilege under LSA-R.S. 9:4808(C);
5. The lienholders did not prove their liens were valid or superior to AmBank's mortgage; and,
6. The claims of the lienholders had no effect as to third parties because the lienholders failed to file timely and adequate notices of lis pendens as required by LSA-R.S. 9:4833(F).
The case before us is governed by provisions of the Private Works Act, LSA-R.S. 9:4801, et seq. Amendments to the Private Works Act, made after the facts of this case had arisen, were not considered.[2]

THE EFFECTS OF ACTUAL KNOWLEDGE ON THE BANK'S RELIANCE
In response to a request for admissions of fact, AmBank admitted that officers of the bank visited the golf course site several times between the dates of September, 1985, through December, 1985. AmBank also admitted that "on or before *814 December 31, 1985 ... significant work had been accomplished and that shaping and construction of tees, lakes, fairways, greens and bunkers had been largely accomplished."
AmBank argues that the trial court improperly considered the sworn statements of Martty, Smith, and Dupree in rendering its decision because AmBank had not stipulated to the use of the statements. Although, based on the record, the validity of that claim is doubtful, it is not necessary to reach that issue. Even without the sworn statements, the record is convincing that the construction work had begun and that AmBank had knowledge that the project was well underway.
AmBank responds to the court's findings with an argument based on LSA-R.S. 9:4820(C), which provides:
C. A person acquiring or intending to acquire a mortgage, privilege, or other right, in or on an immovable may conclusively rely upon an affidavit made by a registered or certified engineer or surveyor or licensed architect that states he inspected the immovable at a specified time and work had not then been commenced nor materials placed at its site, provided the affidavit is filed before or within two business days after the filing of the mortgage, privilege, or other document creating the rights. The correctness of the facts recited in the affidavit may not be controverted to affect the priority of the rights of the person to whom or for whom it is given. A surveyor, architect, or engineer who gives a false or fraudulent affidavit shall be responsible for any loss or damage suffered by any person whose rights are adversely affected.
It is true that the facts of a valid site inspection affidavit cannot be controverted merely to show that work had begun. This rule protects the innocent third party that obtained the affidavit and either did not inspect the property, or had no actual knowledge that more than preparatory work on the project had begun. However, when the issue before the court is whether a party actually relied on the "no work" affidavit, evidence of actual knowledge may be used to show that the party requesting the affidavit did not rely on it. See Louisiana National Bank of Baton Rouge v. Triple R Contractors, Inc., 345 So.2d 7, 11 (La.1977), Tharpe & Brooks, Inc. v. Arnott Corp., 406 So.2d 1, 4 (La. App. 1st Cir.1981), writ granted in part, denied in part, 410 So.2d 1145 (La.1982). To do otherwise would encourage the abuse of an article which affords protection to a mortgage holder that follows the requirements of the statute. It was not meant to provide technical immunity to mortgage holders that have actual knowledge that a project is well under way, who wish to use the affidavit only to protect their interest and usurp the rights of lienholders when a project fails.
Under the facts here, the trial court did not commit manifest error in finding that AmBank knew that work had begun, and, therefore, there was no actual reliance, by AmBank, on the site inspection affidavit.

DEFINITION OF WORK BEGUN
AmBank alleges that the type of work performed in 1985 was only "dirt work." The argument is that "dirt work" is deemed a separate work under LSA-R.S. 9:4808(C) and, under LSA-R.S. 9:4820(A)(2), is not considered the type of work that determines the effective date of privileges granted by the act as to third parties.
The relevant articles provide:
§ 4808. Work defined.
A. A work is a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts.

* * * * * *
C. The clearing, leveling, grading, test piling, cutting or removal of trees and debris, placing of fill dirt, leveling of the land surface, or performance of other work on land for or by an owner, in preparation for the construction or erection of a building or other construction thereon to be substantially or entirely *815 built or erected by a contractor, shall be deemed a separate work to the extent the preparatory work is not a part of the contractor's work. The privileges granted by this Part for the work described in this Subsection shall have no effect as to third persons acquiring rights in, to, or on the immovable before the statement of claim or privilege is filed.

* * * * * *
§ 4820. Privileges; effective date
A. The privileges granted by this Part arise and are effective as to third persons when:
(2) The work is begun by placing materials at the site of the immovable to be used in the work or conducting other work at the site of the immovable the effect of which is visible from a simple inspection and reasonably indicates that the work has begun. For these purposes, services rendered by a surveyor, architect or engineer, the driving of test piling, cutting or removal of trees and debris, placing of fill dirt, leveling of the land surface, and the placing of materials on the immovable having an aggregate price of less than one hundred dollars shall not be considered.
The flaw in AmBank's argument is the placing of emphasis on the term "dirt work." Section 4808(C) designates as separate work those activities that are "in preparation for the construction...." The focal point of both sections is preparation, not whether the work done consisted mainly of hauling, moving, and contouring dirt. The "dirt work" done by C & J was not in preparation for the construction, but was the actual work of constructing a golf course.
By December of 1985, great amounts of dirt had been hauled into the project area. The construction and shaping of fairways, tees, bunkers, greens, and lakes had been largely accomplished by AmBank's own admission. The trial court did not err in finding that work had begun on the construction of the golf course.

RANKING OF PRIVILEGES
LSA-R.S. 9:4821 ranks the privileges granted by LSA-R.S. 9:4801 and 9:4802. The collateral mortgage held by AmBank will prime the privileges granted to materialmen and subcontractors by Sections 4801 and 4802 only if it is a "[b]ona fide" mortgage. LSA-R.S. 9:4821(3). The collateral mortgage was not a bona fide and existing mortgage for purposes of ranking, if the work began or materials were delivered before the collateral mortgage note was pledged to the lender to secure the payment of a loan. American Bank & Trust Company in Monroe v. F & W Construction, Inc., 357 So.2d 1226, 1228-29, (La.App. 2nd Cir.), cert. denied, 359 So.2d 1306 (La.1978), Wallace v. Fidelity National Bank, 219 So.2d 342, 344 (La. App. 1st Cir.), writ refused, 253 La. 1083, 221 So.2d 517 (1969). The record before us does not contain the date of the pledge of the collateral mortgage note. However, work had begun even before the collateral mortgage was signed or recorded on January 2, 1986. The mortgage was not effective when the nonlabor privileges of the materialmen and subcontractors became effective (i.e., when the work began). Because the work had begun on the project before the collateral mortgage became a bona fide and existing mortgage, timely filed materialmen's liens and subcontractors' liens are superior in rank to Am-Bank's collateral mortgage. The superior ranking exists for subcontractors and materialmen, regardless of whether the particular work was performed or material was furnished after the pledge of the note. Capital Bank & Trust Co. v. Broussard Paint & Wallpaper Co., 198 So.2d 204, 208 (La.App. 1st Cir.1967). See Bank of Jena v. Rowlen, 370 So.2d 146, 147 (La.App. 3rd Cir.1979); Tri-South Mortgage Investors v. Forest and Waterway Corporation, 354 So.2d 588, 591 (La.App. 4th Cir.1977). We affirm the holding of the trial court as to the liens of C & J, Kesler, Anderson, Globe, AAA, LeBlanc, Buckle, RLB, Baton Rouge Lumber, Bolton, Montgomery, Central, and Vulcraft.
*816 AmBank attacks the validity of the liens as a basis for nullifying the superior ranking. It claims the lienholders failed to prove adequately their claims. AmBank had the right to attack the validity of the liens in the consolidated suits and at the May 11 hearing, but chose not to attend. AmBank did not appeal the judgments in the consolidated suits which recognized the liens, nor did it appeal the judgments obtained by lienholders in separate proceedings. AmBank has only appealed the judgments which held that liens were superior in ranking to the mortgage. The only issues on appeal concern the ranking of the liens in relation to the mortgage.

PRIVILEGES ARISING AFTER A BONA FIDE MORTGAGE
Barber entered into a contract dated January 23, 1986, with the landowner, Santa Maria, to construct drainage outfalls. The contract did not originate with or flow from the developer or general contractor. The notice of contract was filed in the public records on January 24, 1986.
A contractor is defined by LSA-R.S. 9:4807(A) as "one who contracts with an owner to perform all or part of a work." A general contractor is one "(1) [w]ho contracts to perform all or substantially all of a work; or (2) [w]ho is deemed to be a general contractor by R.S. 9:4808(B)." LSA-R.S. 9:4807(B)(1) & (2). LSA-R.S. 9:4808(B) provides that "[i]f written notice of a contract with a proper bond attached is properly filed within the time required by R.S. 9:4811, the work to be performed under the contract shall be deemed to be a work separate and distinct from other portions of the project.... The contractor, whose notice of contract is so filed, shall be deemed a general contractor."
The comments to statutes, although not a part of the law, suggest the intent of the legislature, as does the legislative history of the Act. Comment (b) to Section 4807 relates the following analysis:
(b) Subsection B resolves a problem that existed under the former law. When read in light of Section 4808, infra, defnining a work it has the following effect. If a contract is entered into by an owner for work on an immovable, and the notice of contract is filed for record with a bond in proper amount attached to it, the work to be performed under the contract is conclusively deemed to be a separate work even though it may be part of a larger project being carried out by the owner. Accordingly, with respect to such work the time for filing claims, the liability of the surety, and all other aspects of the act, will be determined independently even though in the absence of such filing the work might be considered part of a larger and single work. It thus gives assurance to the owner, contractor, surety, and third persons that work undertaken by a contractor under a single contract can be considered and dealt with without regard to its relationship to other work being carried on by the owner.
LSA-R.S. 9:4811(C) provides that "[a] notice of contract is not improperly filed because a proper bond is not attached." Comment (d) to Section 4811 states that Section 4811(C) "recognizes that the filing of the notice of contract serves as a notice of the potential existence of the privileges and fixes their priorities over subsequent mortgages. The absence of a bond does not affect this. The failure to attach a bond will give rise to a claim against the owner...."
The work undertaken by Barber was a separate work, and no work was begun until after the contract was recorded on January 24, 1986. If a bona fide mortgage existed before the notice of contract was recorded, then the mortgage would be given superior ranking.
All the parties agree that the collateral mortgage was recorded on January 2, 1986. The record, however, is silent as to when the collateral mortgage note was pledged to secure the funds to be advanced. Therefore, we remand for additional evidence on the issue of the correct date when the valid pledge of the collateral mortgage note took place. A remand is proper and necessary for the determination of the true facts in order that a just and final judgment may *817 be rendered. LSA-C.C.P. art. 2082, 2164; Kliebert v. Arceneaux Air Conditioning, Inc., 439 So.2d 486, 489 (La.App. 1st Cir. 1983).
Hoffpauir entered into contracts with Santa Maria Management to provide architectual and interior design services for the Santa Maria Golf Club clubhouse. A lien was filed against the Santa Maria property on September 11, 1986.
The ranking of an architect's lien is governed by the general ranking article, LSA-R.S. 9:4821, as well as R.S. 9:4822(D)(2). Section 4822(D)(2) provides that "[t]his privilege shall have no effect as to third persons acquiring rights in, to, or on the immovable before the statement of claim or privilege is filed." Section 4822(D)(2) reproduces the substance of the prior law in LSA-R.S. 9:4813 as interpreted by Capital Bank & Trust Co. v. Broussard Paint & Wallpaper Co., 198 So.2d 204 (La.App. 1st Cir.1967). In Capital Bank, work was begun and materials were furnished prior to recordation of the mortgage. The architect in Capital Bank made a similar argument as Hoffpauir in the instant case. Hoffpauir argues that under the ranking statute, Section 4821, he is entitled to preference over AmBank because work had begun on the project before the date the collateral mortgage note was pledged. However, the court in Capital Bank pointed out the specific provision, now contained in Section 4822(D)(2), which provided that "the architect's lien affects third parties `only from the date of recordation'" of the privilege. Capital Bank, 198 So.2d at 212.
The architect's lien was filed on September 11, 1986. Hoffpauir alleges, as does Barber, that a valid pledge was not made until long after the date the collateral mortgage was recorded and after the date that the Barber and Hoffpauir privileges became effective. Because there is insufficient evidence of when or if the collateral mortgage note was validly pledged, we remand.

LIS PENDENS
In its supplemental brief and by filing a peremptory exception raising the objection of peremption and/or prescription in this court, AmBank raised the issue of whether proper notices of lis pendens were filed. AmBank argues that a failure to file a proper lis pendens, as required by LSA-R.S. 9:4833(F) results in the peremption or prescription of the privilege. Allegedly, some of the lienholders failed to file a notice of lis pendens, and those that did failed to include a reference to a notice of contract between Santa Maria and Smith & Dupree Development Corporation (Smith & Dupree).
LSA-R.S. 9:4833(F) provides:
F. The effect of filing for recordation of a statement of claim or privilege and the privilege preserved by it shall cease as to third persons unless a notice of lis pendens identifying the suit required to be filed by R.S. 9:4823 is filed within one year after the date of filing the claim or privilege. In addition to the requirements of Article 3752 of the Code of Civil Procedure, the notice of lis pendens shall contain a reference to the notice of contract, if one is filed, or a reference to the recorded statement of claim or privilege if a notice of contract is not filed.
Section 4833(F) does not provide for the extinguishment of the privilege because a notice of lis pendens is not timely filed as did the relevant prior article, LSA-R.S. 9:4812. See LSA-R.S. 9:4833, Comment (c) (West 1983). However, Section 4833(F) does provide that, unless a notice is timely filed, the privilege ceases as to third parties.
Generally, the purpose of a notice of lis pendens is to give notice to third parties of the pendency of an action affecting the title or asserting a lien on the immovable property. Bickham v. Bethany, 187 La. 709, 175 So. 465, 467 (1937). See Ragsdale v. Hoover, 353 So.2d 1132, 1134 (La.App. 2nd Cir.1977), cert. denied, 355 So.2d 263 (La.1978). If a mortgage company is a party to a suit concerning the title to an immovable or asserting a mortgage or lien upon the property, it cannot complain that it has not been given notice of the pendency of that action. Bickham, 175 So. at 467. See Tri-South Mortgage Investors, 354 So.2d at 594; Hunt v. LaChere Maison, *818 Inc., 316 So.2d 850, 853-54 (La.App. 1st Cir.1975). The apparent purpose of Section 4833(F) is to relieve a third party dealing with the property of the task of searching the suit records to determine whether the lienholder has filed his suit to preserve his lien against the immovable within the one-year period required by LSA-R.S. 9:4823(A)(2).
C & J filed a suit for declaratory judgment on December 8, 1986, with AmBank as a defendant. The other lienholders were eventually named as defendants. C & J's petition alleges that the named defendants were apparent holders of a security interest in the property. Many of the suits filed by the lienholders to have their liens recognized were consolidated with C & J's suit for declaratory judgment. Other lienholders advised AmBank of pending suits in pleadings filed in the declaratory judgment suit.
Several of the lienholders did file notices of lis pendens. AmBank alleges that the notices were deficient and, therefore, did not provide adequate notification to AmBank.
Globe filed a notice of lis pendens, referencing the suit filed by Globe and other plaintiffs, seeking preservation and recognition of the privilege. The notice did not specifically name all the plaintiffs listed in the suit, but did provide the caption "Globe Heating, Plumbing & Air Conditioning, et al.," and the suit number. A review of the specific suit record would have provided the names of additional parties.
The other notices of lis pendens, filed by lienholders, did not contain a reference to an alleged notice of contract between Santa Maria and Smith & Dupree. This argument has no merit. Neither a contract nor a notice of contract between Santa Maria and Smith & Dupree appears in the record.
Even assuming the existence of a recorded notice of a contract, the record reveals that the work and materials supplied were furnished before the alleged notice was filed on June 27, 1986. The liens were filed near the June 27th date supplied by AmBank in its memorandum in support of the peremptory exceptions, or shortly thereafter. It cannot be justly argued that, under the circumstances, the materialmen and subcontractors were required to refer to a notice of a contract to which none were a party and of which they were possibly unaware.
Although the Private Works Act is interpreted rigidly, strict construction cannot be used to permit purely technical objections to defeat the real intent of the statute. Ragsdale, 353 So.2d at 1134. The failure of Globe's notice of lis pendens to list every plaintiff in the suit, and the lack of a reference to a notice of contract of which there is no evidence in the record, did not render the notices of lis pendens inadequate.
Five of the lienholders, Barber, C & J, Bolton, LeBlanc, and Kesler, did not file a notice of lis pendens. However, an extensive search of the record reveals that AmBank was provided with direct notification that the lienholders had filed suit to preserve the privileges. Notification was provided (1) in pleadings filed by the lienholders in the C & J suit, and (2) when the lienholder suits were joined with the action by C & J. As to the issue of untimeliness, there is insufficient evidence in the record to support an argument for untimely notification. Because AmBank was notified directly in a suit to which it was a party that the lienholders were actively pursuing their claims, AmBank cannot be considered a third party that required the filing of separate notices of lis pendens.
For the foregoing reasons, we affirm in part and reverse the judgment as to the ranking between Barber and AmBank and Hoffpauir and AmBank, and remand for further proceedings consistent with this opinion. The costs of the appeal are to be paid by appellant, American Bank & Trust Company, except for those cases remanded. On those cases, the costs are to await a final determination.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
LANIER, J., concurs in part and dissents in part and assigns reasons.
LANIER, Judge, concurring in part and dissenting in part.
I agree with the majority opinion, except for its treatment of the lis pendens issue.

*819 OBJECTION OF PEREMPTION (LIS PENDENS)
Pursuant to La.R.S. 9:4833(F) the privilege "shall cease as to third persons unless a notice of lis pendens identifying the suit required to be filed by R.S. 9:4823 is filed within one year after the expiration of the time given for filing a statement of claim or privilege." The question then becomes who is a third person for purposes of lis pendens. For example, the owner of the immovable is not a third person. See Official Revision Comment (c) for La.R.S. 9:4833.
Notice of pendency of an action is procedural and is provided for in La.C.C.P. art. 3751 et seq. La.R.S. 9:4833(F) must be construed in pari materia with La.C.C.P. art. 3751 which provides as follows:
The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person not a party thereto unless a notice of the pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752. (Emphasis added)
Thus, for purposes of lis pendens, a third person is one who is not a party to the suit (action). Succession of Wilson v. Wilson, 446 So.2d 526 (La.App. 3rd Cir.1984).
C & J filed its suit (# 309,664) for a declaratory judgment seeking a ranking of the security interests on the immovable property and made AmBank, Barber, Kesler, Bolton, RLB, Buckle, AAA, LeBlanc, Hoffpauir, Globe, Anderson, Baton Rouge Lumber and others parties defendants. Thus, as between these parties there was no necessity to file a notice of lis pendens because they were not third persons to this suit. La.C.C.P. art. 3751.[1]
However, Vulcraft, Montgomery and Central were not parties to the C & J suit. They were parties to a separate suit (# 317,539) filed on June 23, 1987, which was consolidated with the C & J suit by order dated September 3, 1987. AmBank was not a party to the Vulcraft-Montgomery-Central suit. The legal effect of consolidation is discussed in Galloway v. Loppolo, 464 So.2d 386, 389 (La.App. 1st Cir. 1985) as follows:
Consolidation of actions pursuant to La.C.C.P. art. 1561 is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity. Broome v. Gauthier, 443 So.2d 1127 (La. App. 4th Cir.1983), writ denied, 445 So.2d 449 (La.1984); Howard v. Hercules-Gallion Co., 417 So.2d 508 (La.App. 1st Cir.1982), writ denied, 420 So.2d 984 (La.1982). Procedural rights peculiar to one case are not rendered applicable to a companion case by the mere fact of consolidation; each case must stand on its own merits. Broome, 443 So.2d at 1131; Howard, 417 So.2d at 511; Williams v. Scheinuk, 358 So. 2d 340 (La. App. 4th Cir.1978). Thus, it has been held the filing of a request for notice of judgment (Howard,) a request for trial by jury (Broome,) an intervention (Williams,) an order for briefs, or a judgment in one of several consolidated cases do not procedurally affect the others. (Emphasis added) (Footnotes omitted)
See also O'Rourke v. Cormier, 459 So.2d 200 (La.App. 3rd Cir.1984). AmBank is a *820 third person to the Vulcraft-Montgomery-Central suit. Thus, Vulcraft, Montgomery and Central were required to comply with La.R.S. 9:4833(F) and La.C. C.P. art. 3751 to preserve their claims and privileges against AmBank. The majority opinion conflicts with La.C.C.P. art. 1561 and the jurisprudence interpreting it by holding to the contrary. I dissent from the majority holding that "[N]otification was provided ... when the lienholder suits were joined with the action by C & J."
This lis pendens issue was asserted in a peremptory exception raising the objections of peremption and/or prescription filed by AmBank in this court. La.R.S. 9:4833(F) provides, in pertinent part, as follows:
In addition to the requirements of Article 3752 of the Code of Civil Procedure, the notice of lis pendens shall contain a reference to the notice of contract, if one is filed, or a reference to the recorded statement of claim or privilege if a notice of contract is not filed.
La.C.C.P. art. 3752 provides as follows: GLOBE HEATING, PLUMBING & AIR CONDITIONING, INC. et al
VERSUS
SANTA MARIA GOLF CLUB et al
The notice referred to in Article 3751 shall be in writing, signed by the plaintiff, defendant, or other party to the action or proceeding who desires to have the notice recorded, or by a counsel of record for such party, showing the name of the court in which the action or proceeding has been filed, the title, docket number, date of filing, and object thereof, and the description of the property sought to be affected thereby.
This notice shall be recorded in the mortgage office of the parish where the property to be affected is situated, and has effect from the time of the filing for recordation.
La.C.C.P. art. 2163 provides, in pertinent part, as follows:
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.
In the Vulcraft-Montgomery-Central suit, a document providing as follows has been filed:
NUMBER 317,539 DIVISION "M"
19TH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
 NOTICE OF PENDENCY OF ACTION
Notice is hereby given of the filing of the above and entitled and number [sic] suit in
the 19th Judicial District Court of the Parish of East Baton Rouge on the 23rd day of
June, 1987, the object of which is to resolve a dispute between the parties regarding
improvements on the property described as follows:
A certain parcel consisting of Tracts GC1-GC7 in Sections 53, 54, and 55 Township 8
South, Range 2 East, Greensburg Land District, East Baton Rouge Parish, Louisiana.
 SUBMITTED BY:
 GUNN, SMITH & KASTER
 /s/ Craig L. Kaster
 CRAIG L. KASTER
 5800 ONE PERKINS PLACE
 BUILDING ONE
 BATON ROUGE, LOUISIANA 70808
 TELEPHONE: (504) 767-1550
*821 However, there is nothing in the record[2] before us to show that this document, or any other document, has been filed in the mortgage records of East Baton Rouge Parish, as required by La.C.C.P. art. 3752. Thus, there is inadequate proof of record to enable us to rule on the exception.
In this procedural posture, the proper action for this court to take would be to reverse the judgments in favor of Vulcraft, Montgomery and Central, and remand this portion of the case to the trial court for a trial of the exception. DeFrancesch v. Ralph Peterson and Associates Insurance Agency, 508 So.2d 1014 (La.App. 5th Cir. 1987); Genina Marine Services, Inc. v. Arco Oil & Gas Company, 499 So.2d 257 (La.App. 1st Cir.1986); McKeithen v. Leblanc, 491 So.2d 807 (La.App. 3rd Cir.1986). This is particularly appropriate because the majority has reversed the judgments in favor of Barber and Hoffpauir and remanded those claims for new trials.
For the foregoing reasons, I respectfully concur in part and dissent in part.
NOTES
[1] Baton Rouge Lumber filed a motion to dismiss the appeal arguing AmBank was not a party to the suit between Baton Rouge Lumber and Santa Maria. Therefore, Baton Rouge Lumber "has a valid and final judgment against which no appeal will lie." However, the judgments on appeal before this court deal with the ranking issue only, not the judgments recognizing the liens. Baton Rouge Lumber was named a defendant in C & J's action for declaratory judgment seeking a determination of the ranking of the liens in relation to AmBank's mortgage. Baton Rouge Lumber answered the suit and prayed for a ranking of the liens. The appeal on the issue of ranking is properly before this court.
[2] Many of the cases cited interpreted prior provisions of the Act. However, the cited portions dealt with the substance of prior provisions that have been carried forward into the relevant sections.
[1] The majority cites Bickham v. Bethany, 187 La. 709, 175 So. 465 (1937), Tri-South Mortgage Investors v. Forest and Waterway Corporation, 354 So.2d 588 (La.App. 4th Cir.1977) and Hunt v. La Chere Maison, Inc., 316 So.2d 850 (La.App. 1st Cir.1975) for the proposition that "[I]f a mortgage company is a party to a suit concerning the title to an immovable or asserting a mortgage or lien upon the property, it cannot complain that it has not been given notice of the pendency of that action." Bickham interpreted Acts 1904, No. 22, § 1 which provided that "on and after January 1, 1905, the pendency of an action in any court, affecting the title, or asserting a mortgage or lien upon immovable property, shall not be considered or construed as notice to third persons not parties to such suit, unless a notice of pendency of such action shall have been made, filed, or registered, in compliance with the act." (Emphasis added) Bickham, 175 So. at 467. Acts 1904, No. 22 subsequently became La.R.S. 13:3541-3543, as amended by Acts 1958, No. 113. By Acts 1960, No. 32, La. R.S. 13:3541-3543 became La.C.C.P. arts. 3751-3753. The rule that a party to a suit is not a third person for purposes of lis pendens is a statutory rule, not a jurisprudential rule.
[2] What constitutes the record on appeal is set forth in Batiste v. Our Lady of the Lake Regional Medical Center, 550 So.2d 1338, 1343, n. 4 (La. App. 1st Cir.1989).