652 So.2d 552 (1995)
TRIANGLE PACIFIC CORPORATION
v.
NATIONAL BUILDING & CONTRACTING CO., INC. and Dibidale of Louisiana, Inc.
NATIONAL BUILDING AND CONTRACTING CO., INC.
v.
ARABIAN DEVELOPMENT CORP. OF DUBAI, U.A.E., Alerion Bank, Sears, Roebuck and Company, et al.
Nos. 94 CA 0619, 94 CA 0620.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*553 Alan D. Ezkovich, New Orleans, for Alerion Bank.
James S. Holliday, Jr., Baton Rouge, for Nat. Bldg. and Contracting Co., Inc.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
This is an appeal from the trial court's ruling on a Motion to Rank Mortgages and Liens and to Release Funds Held in Custodia Legis. The parties, two lienholders and a mortgage holder, assert claims to the proceeds from the sale of Tchefuncte Harbour Townhomes. The trial court ruled that the lienholders had not perfected their privileges under the Private Works Act, La.R.S. 9:4801-4855, and that the mortgage holder was entitled to the proceeds of the sale.

BACKGROUND
In September of 1987, National Building & Contracting Co. Inc. (National) and Dibidale of Louisiana Inc. (Dibidale) entered into a contract for the construction of the Tchefuncte Harbour Townhomes in Madisonville, Louisiana. National was the general contractor of the project, while Dibidale was the owner. American Bank and Trust (American) financed the project through two mortgages.
Although the project was substantially completed by July of 1988, many of the suppliers and subcontractors went unpaid. Among the unpaid creditors were National, Building Resources, Inc. (Building), and Triangle Pacific Corporation (Triangle). On November 15, 1988, Triangle filed suit against National and Dibidale to enforce its rights under the Private Works Act. National answered and filed a third party demand against Dibidale and American. Triangle amended its petition to name Alerion, American's successor, and Tchefuncte Harbour Association, Inc. (THA), the property owners' association, as defendants.[1] Alerion, National *554 and Dibidale were eventually dismissed from the action. THA, the only remaining defendant, executed a confession of judgment in favor of Triangle. The common areas, owned by THA, were then sold at auction, and the funds were held by the court pending a decision on the validity and ranking of claims to the proceeds. On January 30, 1992, Alerion filed a Motion to Rank Mortgages and Liens and to Release Funds Held in Custodia Legis. This motion was set for hearing on June 22, 1993.
Meanwhile, American had executed an Act of Subordination of its first and second mortgages on August 2, 1988. In a separate action, the trial court construed this act as a release of the bank's mortgages on the common areas. American Bank and Trust Co. v. Dibidale of Louisiana, Inc. consolidated with Sears, Roebuck and Company v. National Building and Contracting Co., Inc., 22nd Judicial District Court Nos. 88-16021 and 88-13763 (5/16/90). While that decision was pending appeal, Alerion, American's successor, and Arabian Development Corporation[2] filed a Joint Stipulation and Motion of Dismissal wherein they purported to stipulate to a reversal of the trial court judgment. Based on this joint motion, this Court signed an order on July 29, 1991, reversing the trial court and holding that the mortgages granted in favor of American were never released. See Appendix. Subsequently, National filed a motion to vacate the order of this Court. In denying National's motion, we stated "[t]he nullity of the order signed by this Court must be sought by a direct action filed in the trial court." Sears, Roebuck and Company v. National Building and Contracting Co., No. 91-0314-15 (6/19/92). National then brought an action to set aside and declare null and void the July 29, 1991, order rendered by this Court. National Building and Contracting Co., Inc. v. Arabian Development Corp. of Dubai, U.A.E., 22nd Judicial District Court No. 9214364 (11/10/92). National's nullity action was consolidated with Triangle's suit.
Following consolidation, National filed a motion to modify the rule to rank until there was a disposition on the nullity suit. The trial court indicated that "[it] will consider the foregoing motion before or during the hearing [on the motion to rank] set for June 22, 1993."
Following the June 22 hearing, the trial court held that neither National nor Building had perfected their privileges under the Private Works Act. The court found that National did not file suit timely and that Building did not file the necessary notice of lis pendens and, thus, both privileges were extinguished. Accordingly, the judgment of the trial court dismissed the claims of National and Building and recognized that Alerion was entitled to the funds held in the registry of the court.
National and Building appeal and assign five errors.
1. The trial court erred in deciding the Rule to Rank prior to the suit on nullity.
2. The trial court erred in disbursing funds prior to making a determination of the merits in the action for nullity.
3. The trial court erred in not following the dictates of the First Circuit Court of Appeal in hearing the suit on nullity.
4. The trial court erred in finding American a third party entitled to the filing of a notice of lis pendens and, thus, finding Building did not have a valid lien under the Private Works Act.
5. The trial court erred in finding that National had not filed suit and, thus, not perfected its privilege under the Private Works Act.

ERRORS ONE AND TWO
In their first and second assignments of error, National and Building contend that the trial court should have ruled on the nullity action prior to dismissing their claims and releasing the proceeds of the sale to Alerion. This argument puts the cart before the horse. Unless either National or Building has a valid lien, neither has an interest in the *555 suit and thus, neither has a right to seek the nullification of this Court's judgment. See La.Code Civ.P. art. 927. To determine whether National or Building had a right to proceed in the nullity action, the court had to first determine whether either had an interest in the suit. Thus, we find no error in the trial court's decision to rule on the motion to rank prior to ruling on the nullity action.
Having found no error with the order in which the trial court decided this matter, we next discuss the nullity action. In the nullity action, National alleged that it was aggrieved by this Court's judgment recognizing the validity of Alerion's mortgages. In response, Alerion filed a peremptory exception raising the objection of no right of action. The basis of Alerion's objection was that National lacked standing to challenge the judgment because it had no recognizable lien and, therefore, had no interest in the suit. Although a formal judgment dismissing the nullity action was not entered, the trial court held that neither National nor Building had valid liens. In so ruling, the court effectively adjudicated their lack of a right to proceed.
The failure of the trial court to specifically rule on the nullity action is of no moment. As an appellate court, we may, on our own motion, notice the failure of a plaintiff to disclose a right or interest in a suit. La. Code Civ.P. art. 927. In the discussion which follows, we affirm the trial court's findings that the liens of both National and Building are invalid. Without valid liens, neither National nor Building has a right or legal interest affected by the judgment which they seek to annul. See La.Code Civ.P. art. 927; Palowsky v. Premier Bancorp, Inc., 597 So.2d 543, 546 (La.App. 1st Cir.1992); Cortez v. Total Transportation, Inc., 577 So.2d 292, 295 (La.App. 5th Cir.1991). Because National and Building have no right or legal interest the nullity action is properly dismissed.

ERROR THREE
In this assignment of error, National and Building contend that the trial court erred in not following the dictates of this Court. In brief, they assert that this Court "ordered that a direct nullity action must be sought in the trial court." They further assert that "[t]he nullity action was simply ignored in spite of this Court's mandate that such an action be brought."
In refusing National's motion to vacate, we stated, "MOTION DENIED. The nullity of the order signed by this Court must be sought by a direct action filed in the trial court. La.C.C.P. arts. 2004-2006." Sears, Roebuck & Company v. National Building & Contracting Co., No. 91-0314-15 (6/19/92). This language does not mandate that a nullity action be brought but merely directs National to the procedure to follow if such relief is sought. The argument that the district court failed to follow any mandate of this Court is without merit.

ERROR FOUR
In this assignment of error, National and Building assert that the trial court erred in ruling that Building had not perfected its lien. In oral reasons for judgment, the trial court stated that the failure to file a notice of lis pendens makes Building's lien unenforceable.
Under the Private Works Act certain acts must be performed by a claimant to preserve its lien rights. With regard to Building, the pertinent provision of the law requires Building to file a proper notice of lis pendens within one year after the date of filing a notice of claim. La.R.S. 9:4833(F). Building admittedly did not file a notice of lis pendens.
Building endeavors to avoid this requirement by arguing that Alerion was not a third party entitled to rely on the absence of the filing of a notice of lis pendens. In support of its position, Building cites C & J Contractors v. American Bank & Trust Co., 559 So.2d 810 (La.App. 1st Cir.), writs denied, 564 So.2d 318, 332 (La.1990). Building further argues that Alerion was in fact aware of the pendency of its enforcement action and therefore was not entitled to rely on the absence of a notice of lis pendens in the public records.
The jurisprudence cited by Building does not support its argument. In C & J Contractors, American Bank, the mortgage holder, was named as a defendant in a suit for *556 declaratory judgment filed by C & J, a lienholder. Numerous suits filed by other lienholders to have their liens recognized were consolidated with the C & J suit. In holding that American Bank was not entitled to rely on the absence of proper notice of lis pendens, we stated that a "party" to a lien enforcement action cannot rely on the defense of the absence of a notice of lis pendens in the public records because such a party is in no sense a third party relying on the public records. Id. at 818.
In this case, Alerion was never made a party to a lawsuit in which Building sought to enforce its lien rights. The documents submitted into evidence by Building fail to show that Alerion was a party to any suit to enforce Building's lien. Because Alerion was never a "party" to a suit to enforce the lien, the C & J Contractors holding is inapplicable. As a third party, Alerion is entitled to rely on the absence of a proper notice of lis pendens.
Building also argues that because Alerion was in fact aware of the pendency of its enforcement action, it was not entitled to rely on the absence of a notice of lis pendens. Building, however, fails to cite any jurisprudence in support of this argument. Lien statutes are stricti juris; their provisions are to be strictly construed against the parties in whose favor the liens are therein created. Ragsdale v. Hoover, 353 So.2d 1132, 1134 (La.App. 2nd Cir.1977), writ denied, 355 So.2d 263 (La.1978); Courshon v. Mauroner-Craddock, Inc., 219 So.2d 258, 263 (La.App. 1st Cir.1968) (on rehearing), writ denied, 219 So.2d 778, 253 La. 760, 761, 762 (1969). Mere knowledge of the pendency of an action does not obviate the need for a lien holder to timely file a proper notice of lis pendens. Building admittedly did not file the necessary notice of lis pendens; therefore, according to La.R.S. 9:4833(F), Building's privilege ceases as to Alerion, a third party.
For these reasons, we affirm that portion of the trial court's judgment dismissing Building's claim.

ERROR FIVE
In this assignment of error, National and Building assert that the trial court erred in ruling that National had not perfected its lien. In its oral reasons for judgment, the court stated that National's lien was unenforceable because it failed to file suit timely.
Under the Private Works Act a claimant must file an action against the owner within a mandated period of time. With regard to National, the pertinent provision of the law requires that National "institute an action against the owner for the enforcement of the claim or privilege within one year after the expiration of the time given by R.S. 9:4822 for filing the statement of claim or privilege..." La.R.S. 9:4823(A)(2). The period for filing the statement of claim or privilege is sixty days after the filing of the notice of termination or substantial completion of the work. La.R.S. 9:4822(B).
In this case, a notice of substantial completion was filed on July 20, 1988. Thus, National had 60 days from this date, or until September 19, 1988, to file its statement of claim or privilege and one year from that date, or until September 19, 1989, to institute an action against Dibidale for the enforcement of the claim.[3] National filed its lien on September 19, 1988. However, no action to enforce the lien was ever instituted.
National asserts that it timely filed an action to enforce its lien against Dibidale by filing a Proof of Claim in Dibidale's bankruptcy proceedings. This Proof of Claim was filed on November 9, 1989. To preserve its claim, National had to file an action to enforce its claim against Dibidale by September 19, 1989. Assuming arguendo the Proof of Claim could equate with an action to enforce, the Proof of Claim filed into the bankruptcy proceedings was not timely and therefore, did not preserve National's claim.
National next asserts that it preserved its claim by filing a third party action against American in response to Triangle's petition to enforce its lien rights. On November 15, 1988, Triangle filed suit against Dibidale and *557 National to perfect its privilege. On November 28, 1988, National responded to the suit. National asserts that it filed an answer, a third party demand against Dibidale and American for indemnification and a crossclaim against Dibidale for National's own lien. Although National did not file an original action against Dibidale, it contends that the cross-claim satisfies the requirements of La.R.S. 9:4823.
A review of National's pleading illustrates that National was seeking indemnification from Dibidale and American in the event that it was cast in judgment against Triangle. While National mentions that Dibidale owes it money for extra work performed, there is no demand made on the lien claim. In its prayer for relief, National seeks two remedies. First, it prays that Triangle's demand against it be dismissed. Second, "[o]n its cross-claims, National prays for judgment over against Dibidale of Louisiana, Inc. and American Bank & Trust Company, in solido, in the full amount of any judgment which may be rendered herein against National in favor of Triangle Pacific Corporation...." Furthermore, in paragraph sixteen of the pleading National specifically "reserve[d] its right to file subsequent suits against American Bank and Dibidale for the full amount of the losses incurred by National as the result of the default of those two parties under the various contracts...."
After reviewing the pleading, we conclude that National was merely seeking indemnification, not filing an action for the enforcement of its lien claim against Dibidale. Because National did not file a suit to enforce its lien within the prescribed period of time, its lien is unenforceable. Accordingly, we affirm that portion of the trial court's judgment dismissing National's claim.

CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing the claims of National and Building is affirmed. The nullity action is dismissed. Costs of this appeal are to be shared equally by National and Building.
AMENDED AND AFFIRMED.
SHORTESS, J., concurs in result.

APPENDIX

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA

NUMBER CA-91-0314-15

SEARS, ROEBUCK & COMPANY, ET AL.,

Plaintiff-Appellee

VERSUS

NATIONAL BUILDING & CONTRACTING CO., ET AL.,

Defendants-Appellees

and

AMERICAN BANK & TRUST CO.,

Intervenor-Appellant

On Appeal from the 22nd Judicial District Court

for the Parish of St. Tammany, State of Louisiana,

Number 88-13763 c/w 88-16021,

The Honorable France W. Watts, Judge, Presiding

ORDER
Considering the foregoing joint motion and stipulation,
It is hereby ordered, adjudged and decreed that the judgment of the district court dated May 15, 1990, as amended by Amended judgment dated September 12, 1990, is hereby reversed insofar as it declares the two mortgages granted by Dibidale of Louisiana, Inc., in favor of American Bank & Trust Co., recorded in MOB 1235, folio 635, and MOB 1273, folio 619, of the records of the Clerk of Court of St. Tammany Parish, Louisiana, to have been released; and
It is further ordered, adjudged and decreed that judgment be, and hereby is, rendered declaring that the mortgages granted *558 in favor of American Bank & Trust Company, recorded in MOB 1235, folio 635, and MOB 1273, folio 619, as they affect any of Tchefuncte Harbour Townhomes, a Planned Unit Development, have never been released by American Bank & Trust Company, and that the mortgages granted in favor of American Bank & Trust Company, recorded in MOB 1235, folio 635, and MOB 1273, folio 619, have continued in force and have maintained, and continue to maintain, the ranking afforded to them by law, without interruption or suspension, each from the respective date of its recordation upon the public records of St. Tammany Parish, Louisiana.
In all other regards, the judgment of the district court dated May 15, 1990, as amended by the amended judgment dated September 12, 1990, is affirmed at appellant's cost.
Judgment read, rendered and signed this 29 day of July, 1991, Baton Rouge, Louisiana.
 /s/ [Signature]
 JUDGE
NOTES
[1] In establishing the development, all areas over which individual lot owners would have a right to use and enjoyment were designated "common areas". The individual lots were known as "private areas". In June of 1988, Dibidale donated ownership of the common areas to THA, for the use and benefit of future lot owners.
[2] Sears, an unpaid supplier of the project, assigned its rights to Arabian Development Corporation of Dubai, U.A.E. (Arabian).
[3] Sixty days from the filing of the notice of substantial completion was September 18, 1988. However, because September 18 fell on a Sunday, National had until the following day to file its claim. See La.Code Civ.P. art. 5059; La.R.S. 1:55.